UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MADONNA BARNETT, ) | |
| ) | Civil Action No. 1:25-cv-002201 |
| Plaintiff, ) | |
| ) | Judge: Matthew F. Kennelly |
| v. ) | |
| ) | Magistrate: Laura K. McNally |
| AMERICAN RIVER TRANSPORTATION ) | |
| COMPANY and JEFFREY KELLER, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT AMERICAN RIVER TRANSPORTATION COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S
FIRST AMENDED COMPLAINT**

Comes now Defendant American River Transportation Company ("ARTCO"), by and through its undersigned counsel, and states the following for its Memorandum in Support of its Motion for Partial Dismissal of Plaintiff's First Amended Complaint:

### I. INTRODUCTION

Plaintiff Madonna Barnett alleges emotional injury arising from conduct of captain Jeffrey Keller while she was employed by ARTCO as a cook aboard the M/V Sally Archer. The primary conduct Plaintiff alleges to make her claims is that Keller grabbed Plaintiff and attempted to force her head into a slop bucket, and later attempted to enter her sleeping quarters at night. [D/E #27 ¶¶ 5-9]. Plaintiff also alleges various other incidents of harsh language, leering at Plaintiff, taking Plaintiff's phone, asking Plaintiff if she was on drugs, making her attend crew meetings and read handbook rules to the crew outside her normal duties, waking her up to berate her regarding thawing meat in the right pan, and ordering her to make his coffee and clean up after his meal. [D/E #27 ¶ 4]. Plaintiff makes claims against Defendant Keller personally and also against ARTCO based solely on Defendant Keller's alleged conduct. Plaintiff's claims

against ARTCO are premised on general maritime law unseaworthiness, maintenance and cure, and the Jones Act (46 U.S.C.A § 3010) including claims for negligence, assault, battery, and infliction of emotional distress. *Id.* ¶ 2. Plaintiff alleges emotional injuries, but the only physical aspects of injury she now alleges are bruises and symptoms of emotional distress such as nausea and weight loss. *Id.* ¶ 6.

With respect to Defendant ARTCO, Plaintiff's Complaint fails to state a claim for which relief can be granted under the Jones Act or unseaworthiness, including for assault, battery, negligence, and negligent or intentional infliction of emotional distress, because: (1) with regard to unseaworthiness, Plaintiff does not allege a savage and vicious attack such as with a weapon sufficient to sustain such a claim, nor that Keller had a history and propensity for dangerous attacks; (2) the tort claims fails because Plaintiff does not allege significant physical injury or that she was in immediate risk of physical impact; (3) liability cannot be imputed to ARTCO since the alleged conduct was not in furtherance of its business and there is no allegation of direct negligence; and (4) the conduct alleged was not sufficiently extreme and outrageous as is required to support claims of infliction of emotional distress.

Plaintiff's First Amended Complaint was filed in response to ARTCO's motion to dismiss, dropping some claims, and attempting to plead in such a manner to avoid ARTCO's defenses as to the rest. *See* [D/E #23, #25, #26]. Because Plaintiff's First Amended Complaint still fails to state a claim against ARTCO for unseaworthiness or under the Jones Act and further amendment would be futile, dismissal with prejudice should be granted. *See Williams v. Trump*, 495 F. Supp. 3d 673, 686–87 (N.D. Ill. 2020), *aff'd sub nom. Williams v. Pritzker*, No. 20-3231, 2021 WL 4955683 (7th Cir. Oct. 26, 2021) ("district courts have broad discretion to deny leave to amend when such amendment would be futile.") (quotations omitted). Accordingly, except for maintenance and cure, Plaintiff's Complaint against ARTCO should be dismissed with prejudice.

## II.     STANDARD FOR MOTION TO DISMISS

A defendant may move to dismiss a plaintiff's claims for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must at least allege facts which, if true, would make out the elements of a prima facie case." *Banks v. Chicago Bd. of Educ.*, 895 F. Supp. 206, 208–09 (N.D. Ill. 1995). The court must accept as true all facts alleged in the complaint and reasonable inferences based on those facts. *Bane v. Ferguson*, 890 F.2d 11 (7th Cir.1989). However, to survive a motion to dismiss, the complaint must show that "the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (citations omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Ashcroft v. Iqbal, 555 U.S.* 662, 678 (2009). "The pleading standard set forth in Federal Rule of Civil Procedure 8 'does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 678). Finally, the court does "not accept as true unsupported conclusions of fact or of mixed fact and law." *Young v. Murphy*, 90 F.3d 1225, 1233 (7th Cir. 1996) (citing *Northern Trust Co. v. Peters,* 69 F.3d 123, 129 (7th Cir.1995)).

## III.     ARGUMENT

**A.     Plaintiff's claims of unseaworthiness fail because the allegations do not rise to the requisite level of egregiousness.**

Under maritime law, a vessel owner has a duty of seaworthiness, which is "only to furnish a vessel and appurtenances reasonably fit for their intended use." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). This "not to suggest that the owner is obligated to furnish

an accident-free ship." *Id.* Rather, "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Id.*

In order to recover under a theory of unseaworthiness based on assault by a crew member, the plaintiff must show that she was the victim of a "savage and vicious attack." *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1096–97 (C.D. Cal. 2015), *aff'd,* 694 F. App'x 585 (9th Cir. 2017) (finding that cook's unseaworthiness claims failed, based on allegations that captain slapped the cook's buttocks, requested sex on ten occasions, banged on her door at night, laid on the deck outside her room on four occasions, criticized her work performance, and denied her overtime pay). To establish a claim for unseaworthiness, the offending person must have had "a proclivity for assaulting people ..., a wicked disposition, a propensity to evil conduct, [and] a savage and vicious nature [such that] the ship becomes a perilous place." *Sloan v. United States*, 603 F. Supp. 2d 798, 811 (E.D. Pa. 2009) (*citing Boudoin v. Lykes Bros. S. S. Co.*, 348 U.S. 336, 339, *amended sub nom. Boudoin v. Lykes Bros. Steamship Co.,* 350 U.S. 811 (1955) (finding unseaworthiness based on crewmember's attack with a glass bottle causing severe injuries, followed by attempted knife attack, where attacker was found to have been "a person of violent character, belligerent disposition, excessive drinking habits, disposed to fighting and making threats and assaults."). That is, an "'assault within the usual and customary standards of the calling' is insufficient; the seaman must have 'such savage disposition as to endanger the others who worked on the ship.'" *Id.* In examining such claims of unseaworthiness, "[c]ourts look to a number of factors ...:(a) provocation, (b) severity of injury, (c) prior and subsequent acts of violence, (d) use of weapons, (e) physical differences, and (f) a planned attack or intent to kill.'" *Id.* (*citing Macke v. Mississippi Belle II, Inc.,* 212 F.Supp.2d 1069, 1076 (S.D.Iowa 2002). "Moreover, cases that have found unseaworthiness based on the conduct of a seaman 'inevitably

contain an egregious assault.... Cases which hold the shipowner liable are, without exception, cases where the assailant uses a deadly weapon or dangerous instrument in the assault.'" *Id.*

Here, the only incident Plaintiff now ties to her unseaworthiness claim is the slop bucket incident in which Keller allegedly grabbed her arm and forced her head toward the slop bucket. [D/E #27 ¶¶ 5-6, 8]. There is no allegation that plaintiff was physically attacked in a manner intended to cause bodily injury, let alone a savage or vicious attack or one involving a weapon. There is no allegation of a severe injury—Plaintiff alleges, at most unspecified bruises (which she indicates happened by accident when she broke free) and later stress-related nausea. While Plaintiff alleges a series of rude comments and behaviors, Plaintiff does not allege that Keller had a savage and vicious nature or a history of violently attacking people or endangering the crew. There is no allegation of any prior or subsequent attacks or acts of violence. Plaintiff's new allegation that Keller's actions were "outside the usual and customary standards of a captain's calling" [D/E #27 ¶ 8] is merely a legal conclusion and ignores the rest of the standard set forth above. Accordingly, the First Amended Complaint fails to state a claim unseaworthiness.

Further, Plaintiff cannot recover under unseaworthiness, because, as discussed below, the alleged injury is not compensable under the Jones Act: "Where an injury is not remediable under the Jones Act, as we hold is true here, neither can the doctrine of unseaworthiness offer redress." *Szymanski v. Columbia Transp. Co., a Div. of Oglebay- Norton Co.*, 154 F.3d 591, 595 (6th Cir. 1998).

> **B.   Plaintiff's Jones Act negligence and intentional tort claims fail because they do not assert physical injury or immediate risk of physical harm.**

All of Plaintiff's tort claims against ARTCO, however styled, arise under the Jones Act which "provides the exclusive recovery for personal injury claims by seamen against their employer." *Wiora v. Harrah's Illinois Corp.*, 68 F. Supp. 2d 988, 995 (N.D. Ill. 1999). "[U]nder

the Jones Act, recovery for pure emotional injuries is not available." *Id.* at 994 (dismissing Jones Act claim for invasion of privacy and intentional infliction of emotional distress from filming and sharing footage of disrobed plaintiff, where the complaint made "no claim of physical harm or injury" but only that she "'suffered severe emotional and psychological damage'"). Claims for infliction of emotional distress are properly dismissed where the plaintiff pleads "no facts to suggest that she suffered physical injury or at the very least, was a bystander in the 'zone of physical danger.'" *Id.* at 994. To recover for emotional injuries under the Jones Act, a plaintiff must satisfy the "zone of danger" test, under which the alleged conduct must either (1) cause actual physical injury, or (2) place the plaintiff "in immediate risk of physical harm," that is, "threaten[] them imminently with physical impact." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 556 (1994) (adopting zone of danger test for emotional injuries under FELA). *See also Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190, 199 (2d Cir. 2011) (holding that *Gottshall* zone of danger test applies to intentional infliction of emotional distress claims); *Thomas v. Burlington Northern Railroad Co.,* No. 90 C 2453, 1991 WL 249720 (N.D. Ill. Nov. 15, 1991) (dismissing FELA intentional infliction of emotional distress claim based on allegations of harassment). [1]

Here, Plaintiff's Complaint does not allege sufficient physical injury, and none of the facts alleged constitute an immediate risk of physical impact, as discussed further below.

    1.    <u>The Complaint does not allege sufficient physical impact or injury</u>.

To qualify as physical impact or injury, there must be physical harm, not merely physical actions resulting in emotional harm. *See Wiora,* 68 F. Supp. 2d at 995. Further, as the Supreme

---

[1] Cases decided under the Federal Employers' Liability Act ("FELA") are cited herein and in many Jones Act cases, as courts "may look to the [FELA] for guidance in determining the applicability of the Jones Act to emotional injury torts. The Jones Act incorporates the [FELA] by reference . . .and extends to seamen the same remedies and liability standards afforded to railroad workers under the FELA." *Wiora,* 68 F. Supp. 2d at 995 n.4 (*citing Ferguson v. Moore–McCormack Lines*, 352 U.S. 521 (1957))

Court has expounded, under the zone of danger test, "the words 'physical impact' do not encompass every form of 'physical contact'"—rather, the contact must be of the kind that "caused, or might have caused, immediate traumatic harm." *Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424, 432 (1997) (finding that physical contact with asbestos did not satisfy zone of danger test where it only caused fear of possible cancer). *See also Nelson v. Metro-N. Commuter R.R.*, 235 F.3d 101, 110 (2d Cir. 2000) ("*Buckley* thus restated the traditional rule that an event cannot constitute a physical impact, even if it entails contact, unless it has a physically harmful effect on the body").

Physical contact, even if resulting in aches, scrapes or bruises, does not amount to the requisite physical injury. *See Tongret v. Norfolk & W. Ry. Co.,* 980 F. Supp. 903, 907 (N.D. Ohio 1997) (holding that plaintiff had not demonstrated requisite physical impact or immediate threat of physical harm even where plaintiff was not only threatened and harassed, but also hit on the back of the neck and placed in a headlock, resulting in a headache but no bump: "That headlock, while literally a physical impact, did not place Plaintiff within the zone of danger. In reality the headlock was nothing more than an uninvited touching, not an infliction of injury."). *See also Lukowski v. CSX Transp., Inc.*, 332 F. Supp. 2d 1065, 1067 (N.D. Ohio 2004), *aff'd,* 416 F.3d 478 (6th Cir. 2005) (finding that physical injury requirement was not met by "minor bruises that did not require medical attention"); *Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546, 547 (5th Cir. 1992) (holding that seaman could not recover under Jones Act because "any physical injuries that Mr. Ainsworth may have experienced, for example, an upset stomach, headaches, or a pulled muscle, are trivial and do not support recovery"); *Briscoe v. Devall Towing & Boat Serv. of Hackberry, Inc.,* 799 F. Supp. 39, 40-41 (W.D. La. 1992), aff'd, 992 F.2d 323 (5th Cir. 1993) (holding that a plaintiff could not recover under the Jones Act for emotional injuries from jumping from a sinking vessel, where he was "skinned up a little and bruised a little with no

other physical injury"—"That this plaintiff has suffered some trivial physical injury is not sufficient reason to allow the plaintiff to recover for an emotional injury."); *Gaston v. Flowers Transp.,* 866 F.2d 816, 817 (5th Cir.1989) (affirming dismissal of Jones Act suit as being for purely emotional injuries, despite a bruised elbow from a fall which the court concluded was a "trivial physical injury").

Further, courts have often found that sequelae or manifestations of emotional distress do not constitute the requisite physical injury or impact. *See Szymanski v. Columbia Transp. Co., a Div. of Oglebay- Norton Co.*, 154 F.3d 591, 594-95 (6th Cir. 1998) (holding that seaman could not recover under Jones Act for a heart attack caused by the stress of working with an incompetent fellow employee: "This confuses the 'physical impact' that is a prerequisite for liability (meaning either actual impact by a physical object or being in the zone of danger for such an impact) with any physical manifestations of an emotional injury that may have occurred"); *Gottshall*, 512 U.S. 532, 539, 558 (holding that worker who suffered headaches and weight loss resulting from job stress failed to meet zone of danger test). *See also Higgins v. Metro-N. R. Co.*, 318 F.3d 422, 432 (2d Cir. 2003) (Sotomayor, J. concurring) (reasoning that plaintiff's emotional injuries and consequent physical manifestations—triggering of multiple sclerosis symptoms—were not compensable under zone of danger test for purposes FELA intentional infliction of emotional distress claim, even though supervisor yelled at plaintiff in front of others, slapped her buttocks, touched her breast, poked her ribs and put his arms around her waist).

Here, the allegations are devoid of any claim of significant physical injury. None of the damages listed in the Complaint include bodily injury. The only allegation involving any physical contact was the slop bucket incident, in which Keller allegedly "seized Plaintiff's arm, shoved his other hand into her back, and dragged her across the galley" then "grabbed the back

of her head, and forcibly plunged her face into the bucket." [D/E #27 ¶¶ 5-6]. Plaintiff's Amended Complaint now adds that when Keller released her arm as she was trying to break free, "the recoil sent Plaintiff crashing into the cooler doors behind her" and that "the ordeal left her with bruises across her body." *Id.* ¶ 6. This does allege uninvited physical contact; however, as in the *Lukowski*, *Tongret, Briscoe* and *Gaston* cases mentioned above, it does not allege the level of physical injury required to state a cause of action for plaintiff's negligence and intentional tort claims.

Plaintiff, in her Amended Complaint, now claims in addition to psychological impacts that she suffers symptoms of nausea, vomiting, diarrhea, and weight loss. [D/E #27 ¶ 6]. As discussed above, such sequelae of emotional distress are not sufficient to qualify as physical impact so as to satisfy the zone of danger test, and, in any case, the physical sequelae alleged are not significant enough to state a cause of action for Plaintiff's negligence and intentional tort claims.

Therefore, the Complaint does not satisfy the physical injury prong of the zone of danger test.

    2. <u>The Complaint does not allege immediate risk of physical impact.</u>

Since Plaintiff does not allege the kind of physical injury required under the zone of danger test, the only other way for her to recover would be if she had been at an immediate risk of physical harm. In order to constitute an immediate risk of physical harm under the zone of danger test, subjective fear is not enough; rather, the actual or threatened physical impact must have "placed the plaintiff in reasonable apprehension of physical harm." *Wahlstrom v. Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 517 (S.D.N.Y. 2000). Further, the risk must be both significant and temporally immediate. *Nelson v. Metro-N. Commuter R.R.*, 235 F.3d 101 (2d Cir. 2000). In *Nelson*, the court determined that the terms "immediate" and "imminent" with respect

to the zone of danger test require temporal immediacy, but also require either that the risk of physical harm be significant, or that there be both "some degree of spatial proximity" and "some degree of likelihood and significance of physical harm." *Id.* at 112. In any case, "even when temporally very close, the risk of physical harm to the plaintiff must be, at the very least, more than minimal." *Id.* at 113. In *Nelson*, a fellow employee was allowed to enter the area where plaintiff was working after she had reported sexual harassment and groping by that employee. *Id.* at 103-4. The court found that this did not constitute an immediate or imminent risk of physical harm. *Id.* at 113. Even though another incident could have happened quickly, the risk was minimal. *Id.*

Here, Plaintiff does not allege facts which could give rise to a reasonable apprehension or substantial risk of immediate physical injury. Most of the alleged incidents involved Keller ordering Plaintiff to do things or verbally berating her, and do not include any allegation of physical danger whatsoever. [D/E # 27 ¶ 4.b-i]. The remaining alleged incidents are addressed below.

Plaintiff alleges, "While scrutinizing her grocery order, Captain Keller stated something to the effect of, (i) get me a knife so I can stab this bitch, and (ii) if she ordered another potato, he would shove it up her ass[.]" [D/E #27 ¶ 4.a]. Such words, while inappropriate, could not cause reasonable apprehension of immediate physical impact. It is not alleged that Keller actually got a knife, or even that he stated he would get a knife, but only that he asked some unspecified third person there to get him a knife. This utterance could only be taken as a hyperbolic comment, but even if it could be understood as a literal order, it would have required a third person to become complicit before any supposed stabbing could occur. Thus, even if injury was actually threatened, it was not immediate but necessarily mediated through others, and there is nothing to suggest that such others might have aided in such a crime. Likewise, the alleged comment

regarding a potato could only reasonably be interpreted as hyperbole rather than an actual threat of physical harm. Even if it were taken literally, it was contingent—"*if* she ordered another potato"—and thus cannot be construed as immediate or imminent.

Plaintiff's Amended Complaint points to the attempts to enter her sleeping quarters as placing her in the "zone of danger," and possibly implicates the slop bucket incident as well. *See* [D/E #27 ¶ 9]. As to the slop bucket incident, Plaintiff does not allege what kind of physical injury was imminent from being grabbed and forced to look into the bucket. Surely it was no more than the kind of physical harm she alleged actually occurred—bruising—which is not sufficient as discussed above. Even that seems to have come about unexpectedly when she allegedly was suddenly released and crashed into the cooler doors, and thus did not involve apprehension of such imminent harm. As to the alleged attempts to enter her room, the Amended Complaint alleges no facts which indicate anything that would make such a risk substantial or immediate. It is not alleged that Keller actually entered her room or even opened the door. There was no allegation of a close call. There is no allegation that Keller said anything that would indicate he was about to immediately injure Plaintiff. Furthermore, as discussed below, the attempts to enter Plaintiff's room cannot even be imputed to ARTCO because they could not have been connected with any furtherance of the vessel's business.

In short, the allegations do not amount to an actual risk of physical harm, and certainly not an immediate or imminent one. Accordingly, Plaintiff fails to state a claim for injury under the Jones Act.

> **C. Plaintiff's negligence and intentional tort claims fail because they do not sufficiently allege that the incidents were a result of ARTCO's direct negligence or in furtherance of ARTCO's business.**

In order to recover from her employer for the negligence or intentional tort of a fellow employee, a Jones Act plaintiff must show either "that the employee's tort was committed in

furtherance of the employer's business," or that the employer was directly negligent because it had knowledge of the employee's propensities. *Sobieski v. Ispat Island, Inc.*, 413 F.3d 628 (7th Cir. 2005). Under the first theory, the tortious acts must have been committed within the scope of employment, that is, as "a necessary incident of the day's work or be essential to the performance of the work." *Id.* at 634 (*citing Rogers v. Chi. & N.W. Trans. Co.,* 947 F.2d 837, 839 (7th Cir.1991)). Under the second theory, the employer is "liable for an employee's tort only if the employer was negligent in hiring, supervising, or failing to fire the intentional wrongdoer." *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 818 (7th Cir. 1985).

In *Sobieski¸* the Seventh Circuit found that the employer was not liable in negligence or intentional tort to a plaintiff who sustained a neck injury when a fellow employee attempted an unwanted pseudo-chiropractic maneuver. 413 F.3d at 631-36. The court found that the claim did not meet the scope of employment test because the tortfeasor employee "was a mate's assistant, and his official duties were to work on deck, steer the ship, and act as a lookout. It is undisputed that [he] had no express authorization to crack anyone's neck, nor was such neck-tractioning part of his official duties." *Id.* at 634. Plaintiff argued that the test depended on whether the negligent employee "had a purpose, in part, to further the employer's interests" and that the employee had cracked the necks of several employees subjectively believing that he was helping them feel better and thus work better. *Id.* The court rejected this argument, stating that, to the extent subjective beliefs are relevant, they must be reasonable and the resulting actions related to the ship's business; but the employer there did not know of or condone such acts regardless of the intention, and any conceivable benefit to the employer's business was tangential. *Id.* The court likewise found that there was no direct negligence because there was no evidence that the employer or its officers knew of the employee's reputation for cracking necks or failed to stop the employee's actions. *Id.* at 636.

Here, the allegations do not support either basis for employer liability. The alleged facts are not sufficient to support Plaintiff's claim that Keller's alleged conduct was in furtherance of ARTCO's business. It is not conceivable that such allegations as attempting to enter Plaintiff's sleeping quarters, or leering at her, had any relation to the ship's business. *See Higgins v. Metro-N. R. Co.*, 318 F.3d 422, 426 (2d Cir. 2003) ("It is well settled that sexual harassment 'consisting of unwelcome remarks and touching is motivated solely by individual desires and serves no purpose of the employer . . . Therefore, the alleged sex-related comments and acts cannot be imputed to [the employer]").

As for the other alleged conduct, there is no allegation that ARTCO condoned such conduct, that such conduct benefitted ARTCO's business, that threatening or humiliating Plaintiff was part of Keller's official duties, or that such acts were "a necessary incident of the day's work or [were] essential to the performance of the work." *Sobieski*, 413 F.3d at 634.

Finally, the First Amended Complaint does not allege direct negligence on ARTCO's part. It does not allege that ARTCO had any knowledge, actual or constructive, of any propensity of Keller to the conduct alleged, or even that Keller had a history of such conduct.

Accordingly, ARTCO cannot be liable to Plaintiff under her tort claims, which all stem from Keller's alleged conduct which cannot be imputed to ARTCO.

> **D. Plaintiff's infliction of emotional distress claims fail because the conduct alleged was not sufficiently extreme and outrageous.**

To state a claim for infliction of emotional distress under the Jones Act, the plaintiff must allege conduct that is extreme and outrageous. *See Sloan v. United States*, 603 F. Supp. 2d 798, 806 (E.D. Pa. 2009) (finding that alleged conduct was not sufficiently outrageous and extreme where plaintiff alleged that co-worker physically threatened him in an altercation, and that he was refused overtime and subject to racial epithets). It is "extremely rare to find conduct in the

employment context that will rise to the level of outrageousness necessary to provide a basis of recovery for the tort of intentional infliction of emotional distress." *Id.* at 807. *See also Barclay v. Keystone Shipping Co.*, 128 F.Supp.2d 237 (E.D.Pa.2001) (declining to find conduct extreme and outrageous where supervisor singled plaintiff out for harassment, racially derogatory comments were made in his presence, captain entered plaintiff's room without consent, and failed to provide immersion diving suit); *Yballa v. Sea-Land Servs., Inc.*, 919 F. Supp. 1428, 1437 (D. Haw. 1995) (alleged conduct was not extreme and outrageous where supervisor woke plaintiff up in the night, swore at him and verbally abused him, and threatened to call the Coast Guard to arrest him); *Visconti v. Consolidated Rail Corp.*, 801 F.Supp. 1200 (S.D.N.Y. 1992) (dismissing complaint for infliction of emotional distress alleging harassment and belligerence by managers, false accusations of rule violations and insubordination, and humiliation in front of other employees).

Here, the allegations amount to no more than verbal abuse of the type that is not sufficiently extreme or outrageous to support a claim of infliction of emotional distress.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's claims against ARTCO under the Jones Act and general maritime law unseaworthiness, including assault, battery, negligence, and intentional infliction of emotional distress, should be dismissed with prejudice.

                          FOX SMITH, LLC

By:   */s/ Theodore H. Lucas*
       Theodore H. Lucas, #06203138
       tlucas@foxsmithlaw.com
       Aaron C. Sherman, #70454MO
       asherman@foxsmithlaw.com
       One S. Memorial Drive, 12th Floor
       St. Louis, MO 63102
       (314) 588-7000
       (314) 588-1965 (Fax)

       Attorneys for American River Transportation Company

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of the foregoing was electronically filed with CM/ECF this 5th day of June, 2025, which will send notification of such filing to all parties of record and to:

| | |
|---|---|
| Dennis M. O'Bryan (P30545)<br>Aurora G. O'Bryan (6346050<br>O'Bryan Baun Karamanian<br>401 S. Old Woodward, Suite 463<br>Birmingham, MI 48009<br>dob@obryanlaw.net<br>aob@obryanlaw.net<br><br>Frederick Mendelsohn (6193281)<br>Burke, Warren, MacKay & Serritella, P.C.<br>330 N. Wabash Ave., 21st Floor<br>Chicago, IL 60611-3607<br>fmendelsohn@burkelaw.com<br><br>**ATTORNEY FOR PLAINTIFF** | John A. O'Donnell, Sr.<br>John A. O'Donnell, Jr.<br>Luke J. Sawicki<br>Marwedel, Minichello & Reeb, P.C.<br>303 West Madison Street<br>Suite 1100<br>Chicago, IL 60606<br>Phone: (312) 445-5318<br>Fax: (312 902-9900<br>jodonnellsr@mmr-law.com<br>jodonnelljr@mmr-law.com<br>lsawicki@mmr-law.com<br><br>**ATTORNEY FOR DEFENDANT**<br>**JEFFREY KELLER** |

                                                  */s/ Theodore H. Lucas*